NOT DESIGNATED FOR PUBLICATION

Nos. 118,597
118,598
118,599

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Interests of S.I., Jr., I.I., and D.I.,
Minor Children.

MEMORANDUM OPINION

Appeal from Brown District Court; JAMES A. PATTON, judge. Opinion filed June 1, 2018. Affirmed.

*Meghan K. Voracek*, of O'Keefe Law Office, of Seneca, for appellant natural father.

*Kelly J. Fuemmeler*, of Troy, for appellant natural mother.

*Kevin M. Hill*, county attorney, for appellee.

Before POWELL, P.J., ATCHESON and BRUNS, JJ.

PER CURIAM: S.I., Sr., and M.I., the father and mother of three children, appeal the decision of the Brown County District Court terminating their parental rights. They contend the ruling lacked sufficient evidence supporting the findings they were unfit, the unfitness would likely continue, and termination fostered the best interests of the children. We disagree and affirm the district court.

1

The State first received information in June 2014 that the children might be neglected and in need of care. At the time, I.I. was 4 years old, D.I. was 3 years old, and S.I., Jr., was about 2 months old. The parents stipulated the children were in need of care, and the district court transferred legal custody to the Kansas Department for Children and Families. The Department kept the children in an in-home placement with S.I., Sr., and M.I., until October 2015. The children were then removed from the home and placed in foster care. The State filed a motion to terminate parental rights in March 2017. The district court held an evidentiary hearing on the motion in October 2017 and promptly entered a termination order—more than three years after the case had begun.

The evidence showed that S.I., Sr., and M.I. were never really able to provide adequate housing for the children. Even during the in-home placement, the family residence was poorly maintained. There was a significant accumulation of trash, evidence that a pet dog often urinated and defecated in the house, and only a small working refrigerator without milk or other healthful food for young children. The children had lice and what looked like insect bites. After the children were placed in foster care, S.I., Sr., and M.I. frequently moved and never acquired a residence that would accommodate the family. Sufficient housing was a significant component of the plan the social service agencies developed for S.I., Sr., and M.I. to regain custody of the children. During the summer of 2016, S.I., Sr., and M.I. had no electricity in their house, so they lived in a tent. For at least part of a winter, their home had no heat. And they moved to Nebraska for an extended period during these proceedings.

Similarly, S.I., Sr., and M.I. never demonstrated they could financially support the family. M.I. was unable to obtain or keep paying jobs, although that, too, was a principal requirement for reintegration of the family. S.I., Sr., worked only sporadically and received a small monthly disability benefit.

Throughout the proceedings, the case workers found the personal hygiene of both S.I., Sr., and M.I. to be extraordinarily poor—perhaps the worst they had encountered. Despite ongoing efforts to educate the couple in that respect, the case workers saw little or no improvement. They expressed concern that the children would be likewise uncared for if they were returned to S.I., Sr., and M.I.

S.I., Sr., also had an extended history of mental instability, including severe bouts of depression, suicidal ideation, and several suicide attempts. The evidence showed that he had tried to kill himself most recently in 2015 and was hospitalized for depression for a week in 2017. In addition, S.I., Sr., displayed an inability to control his anger. He verbally abused and threatened case workers a number of times. He was convicted of domestic assault of M.I., while the two were living in Nebraska. And the Department substantiated that he burned one of the children with a cigarette during an unsupervised visit in May 2016. As a result, the Department ended the unsupervised visits S.I., Sr., and M.I. had with their children. The supervised visits were often unproductive—S.I., Sr., and M.I. frequently would engage the assigned case worker with complaints about the process rather than playing with the children. Other times, they wouldn't interact with all of the children and had to be coached to do so.

The evidence showed that S.I., Sr., and M.I. did make measureable progress on or complete some aspects of the plan for reintegrating the family. They kept in regular contact with their case workers. S.I., Sr., participated in some individual therapy but did not continue as recommended. M.I. obtained her driver's license and a car. They completed parenting classes. But they failed to assimilate those lessons into their interactions with their children. Both of them submitted to random drug tests as required, and the results were always negative. The case workers indicated that the children showed genuine emotional bonds with their parents.

In its journal entry, the district court found S.I., Sr., and M.I. to be unfit because: (1) they "demonstrated a lack of effort . . . to adjust [their] circumstances, conduct, or

conditions to meet the needs" of the children; (2) "reasonable efforts" of appropriate social service agencies failed to "rehabilitate the family"; and (3) they "failed to carry out a reasonable plan . . . towards reintegration of the minor children into the parental home." The district court also found the conditions of unfitness were unlikely to change in the foreseeable future and the best interests of the children warranted termination of S.I., Sr., and M.I.'s parental rights with continued custodial placement with the Department. See K.S.A. 2017 Supp. 38-2269(a), (b)(7), (b)(8), (c)(3), (g)(1). S.I., Sr., and M.I. timely filed separate appeals from the district court's termination order. This court consolidated the appeals for review and disposition.

ANALYSIS

As we have indicated, S.I., Sr., and M.I. challenge the sufficiency of the evidence supporting the statutory components of the district court's termination decision:  parental unfitness, unlikelihood of change, and the children's best interests. We first outline the governing legal principles and then apply them to the evidence in this case.

*Governing Legal Principles*

A parent has a constitutionally protected liberty interest in the relationship with his or her child. See *Santosky v. Kramer*, 455 U.S. 745, 753, 759-60, 102 S. Ct. 1388, 71 L. Ed. 2d 599 (1982); *In re B.D.-Y.*, 286 Kan. 686, 697-98, 187 P.3d 594 (2008). Given the inherent importance and unique character of that relationship, the right has been deemed fundamental. Accordingly, the State may extinguish the legal bonds between parent and child only upon clear and convincing proof of parental unfitness. K.S.A. 2017 Supp. 38-2269(a); *In re R.S.*, 50 Kan. App. 2d 1105, Syl. ¶ 1, 336 P.3d 903 (2014).

As provided in K.S.A. 2017 Supp. 38-2269(a), the State must prove the parent to be unfit "by reason of conduct or condition" making him or her "unable to care properly for a child" and that the circumstances are "unlikely to change in the foreseeable future."

4

The statute contains a nonexclusive list of nine conditions that singularly or in combination would amount to unfitness. K.S.A. 2017 Supp. 38-2269(b). And the statute lists four other factors to be considered if a parent no longer has physical custody of a child. K.S.A. 2017 Supp. 38-2269(c).

In reviewing a district court's determination of unfitness, an appellate court must be convinced, based on the full evidentiary record considered in a light favoring the State as the prevailing party, that a rational fact-finder could have found that decision "highly probable, *i.e.*, [supported] by clear and convincing evidence." *In re B.D.-Y.*, 286 Kan. at 705. The appellate court cannot weigh conflicting evidence, pass on the credibility of witnesses, or otherwise independently decide disputed questions of fact. 286 Kan. at 705. In short, any conflicts in evidence must be resolved to the State's benefit and against S.I., Sr., and M.I.

Having found unfitness and unlikelihood of any timely change, the district court must then decide whether termination of parental rights is "in the best interests of the child." K.S.A. 2017 Supp. 38-2269(g). As directed by the language of K.S.A. 2017 Supp. 28-2269(g), the district court must accord "primary consideration to the physical, mental[,] and emotional health of the child." The district court should weigh the benefits to the child in terminating the relationship with the parent, given the characteristics and duration of the unfitness, against the emotional trauma to the child that may result from that termination and the removal of the parent from his or her life. See *In re K.R.*, 43 Kan. App. 2d 891, 904, 233 P.3d 746 (2010).

The district court makes that determination based on a preponderance of the evidence. *In re R.S.*, 50 Kan. App. 2d at 1116. The best interests issue is essentially entrusted to the district court acting within its sound judicial discretion. 50 Kan. App. 2d at 1115-16. An appellate court reviews those sorts of decisions for abuse of discretion. A district court exceeds that broad latitude if it rules in a way no reasonable judicial officer would under the circumstances, if it ignores controlling facts or relies on unproven

factual representations, or if it acts outside the legal framework appropriate to the issue. See *Northern Natural Gas Co. v. ONEOK Field Services Co.*, 296 Kan. 906, 935, 296 P.3d 1106 (2013); *State v. Ward*, 292 Kan. 541, Syl. ¶ 3, 256 P.3d 801 (2011).

*Governing Principles Applied*

Social service agencies and case workers endeavored to help S.I., Sr., and M.I. over an extended period in developing adequate parenting skills and, more broadly, general life skills so they might be able to raise their children. This case was unusually protracted, as the social service agencies tried to work with S.I., Sr., and M.I. far longer than is common. The law does not require the agencies to mold ideal mothers and fathers out of otherwise inadequate parents. The objective is considerably more modest:  To impart sufficient skills that parents no longer pose a tangible danger to the mental and physical wellbeing of their children and can provide a minimally safe, nurturing environment. See *In re A.M.*, No. 116,391, 2017 WL 2022704, at *1 (Kan. App. 2017) (unpublished opinion) (termination of rights reserved for those persons "irredeemably unfit" to raise a child rather than for "the below average and even the poor parent").

Despite the considerable efforts to help S.I., Sr., and M.I., they could not reach even the threshold of that legal standard. And, in point of fact, they showed no improvement over time in some of the most critical areas—adequate housing, minimal financial resources, and a physically and emotionally healthful environment. Based on the evidence, the children would have been at substantial risk had they been returned to the custody of S.I., Sr., and M.I. in October 2017. In short, the evidence, viewed through the appropriate review standard, would have persuaded a reasonable person that it was highly probable S.I., Sr., and M.I. were unfit in the ways the district court found. The district court explicitly focused on the lack of improvement. As we have outlined, the record amply supports that conclusion. Each of the grounds the district court cited entails a statutory basis for terminating parental rights. See K.S.A. 2017 Supp. 38-2269. And implicit in that conclusion is a finding that S.I., Sr., and M.I. insufficiently cared for the

children, consistent with the earlier determination that they were in need of care. See K.S.A. 2017 Supp. 38-2202(d)(2) (child "without the care. . . necessary for [his or her] physical, mental or emotional health" statutorily deemed "in need of care"). The record also amply supports that conclusion.

The evidence established a high probability that the conditions of unfitness were unlikely to change in the foreseeable future. K.S.A. 2017 Supp. 38-2269(a). In assessing alleviation of unfitness, the courts must measure the appropriate period by taking account of how children experience the passage of time. K.S.A. 2017 Supp. 38-2201(b)(4). Statutory "child time" differs from adult time because for young children in particular a month or a year reflects a greater portion of their lives than the same period would for older teens or adults, and that difference in perception typically favors a prompt case disposition achieving permanency. *In re M.B.*, 39 Kan. App. 2d 31, 45, 176 P.3d 977 (2008); *In re A.L.E.A.*, No. 116,276, 2017 WL 2617142, at *4 (Kan. App.) (unpublished opinion), *rev. denied* 307 Kan. ___ (November 9, 2017); *In re G.A.Y.*, No. 109,605, 2013 WL 5507639, at *1 (Kan. App. 2013) (unpublished opinion). Here, all three children were quite young, so the legal standard supported a finding that the unfitness would persist too far into the future. Again, the record demonstrated S.I., Sr., and M.I. made no material headway on the most critical components for reintegration with their children. The lack of progress for that length of time reasonably foretold that S.I., Sr., and M.I. would not do appreciably better in the foreseeable future however that period might be measured.

Finally, the district court found that the best interests of the children favored termination. The district court did not amplify on the specific basis for its conclusion. The call is one entrusted to the district court's discretion. Nothing suggests the district court misunderstood the evidence or the governing law. The district court correctly noted the best-interests decision turns on the physical, mental, and emotional wellbeing of the children, weighing the impact of termination against the impact of continuing the relationship. Under the circumstances, the district court would have abused its discretion

only if a reasonable judge could not have come to the same conclusion in light of the evidence. We readily conclude the district court would not stand alone in its decision.

What we have said about the evidence supporting unfitness also bears directly on the evaluation of the children's best interests. S.I., Sr., and M.I.'s neglect of the children has been chronic and almost certainly would continue if the family were reunited. Given the breadth and depth of the neglect, the best interests tilt strongly for termination. The district court acted well within its discretion.

In closing, we make two observations. First, we have looked at S.I., Sr., and M.I. jointly in evaluating this case. Nothing in the record suggested, let alone established, either one of them had or would separate from the other in an effort to regain custody of the children. We don't mean to indicate that might have made any difference. We simply haven't evaluated the evidence or applied the law to account for that hypothetical circumstance. By the same token, however, we necessarily viewed the evidence as the district court received it—that S.I., Sr., and M.I. intended to remain a couple and to parent their children that way. Finally, as this court has pointed out before, the legal requirements for termination—unfitness, unlikelihood of change, and best interests— ultimately are not fault-based determinations. As a result, termination may be both appropriate and necessary even when the parents involved truly love their children. See *In re A.L.E.A.*, 2017 WL 2617142, at *6.

Affirmed.